Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the Proposed Class*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDE FURR, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MEDICREDIT INC, a Missouri registered corporation,<br><br>*Defendant.* | No. 3:23-cv-04776-AMO<br><br>CLASS ACTION COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Jude Furr ("Plaintiff Furr" or "Furr") brings this Class Action Complaint and Demand for Jury Trial against Defendant Medicredit Inc ("Defendant" or "Medicredit") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by placing pre-recorded calls without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Furr, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1. Plaintiff Jude Furr is a resident of Dale City, California.

2. Defendant Medicredit is a Missouri registered corporation headquartered in Earth City, Missouri. Defendant Medicredit conducts business throughout this District, throughout California and throughout the US.

**JURISDICTION AND VENUE**

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227.

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District and makes calls into this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District and the wrongful conduct giving rise to this case was directed by Defendant into this District.

**INTRODUCTION**

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 144.8 million per day. www.robocallindex.com (last visited August 27, 2023).

11. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Medicredit handles the billing and collections of medical centers throughout the US.

15. Medicredit places debt collection calls to consumers throughout the US.

16. Consumers have captured and posted pre-recorded calls they received from Medicredit online, from the same phone number Defendant used to call Plaintiff, including:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

3







[3]

17.   Plaintiff Furr is the sole owner and user of his cell phone number.

18.   The Better Business Bureau ("BBB") posted an alert on its Medicredit page, noting that there has been a significant pattern of complaints regarding calls that Medicredit placed to consumers who don't owe a debt:

⚠ **CURRENT ALERTS FOR THIS BUSINESS**

**Pattern of Complaint:**
BBB has received consumer complaints and customer reviews about Medicredit, Inc. which allege negative reporting on a consumer's credit report, consumers state they have received no written notification or documentation from the company alerting them of the debt, <u>consumers claim they do not owe the debts reported, collection efforts were made against the wrong individual,</u> difficulty contacting the company and failure to honor cease and desist requests.
In March 2023, BBB contacted Medicredit regarding its concerns. On April 19, 2023, the company responded to BBB and stated, "Medicredit, Inc. is committed to providing satisfactory service. The Customer Service staff is trained to answer questions and provide timely assistance. In our ongoing commitment to continuous improvement, we welcome feedback as an important component."

[4]

---

[3] https://directory.youmail.com/phone/800-888-2238
[4] https://www.bbb.org/us/mo/saint-louis/profile/collections-agencies/medicredit-inc-0734-110035703/complaints

4

19. As per the above, the Medicredit BBB page is filled with complaints from consumers who received calls when they don't own a debt, including:

- "I have been receiving phone calls from this company stating I owe money for a medical bill. ***I have not been to the hospital in many years and I believe this amount owed to be false or fraudulent.*** I request verification of this debt and to be only contacted through email by the Medicredit. Thank you."[5] (emphasis added)

- "For the last few months, medicicredit keeps ***calling me and my husband about debt I do not have***. I have informed them of this and asked to stop being called, yet they continue. I told them again to stop calling or I would report them, they still called, my next step is a cease and desist, they are a troublesome company that should not have my information,yet they do"[6] (emphasis added)

- "Call from Medicredit (someone identified as *****) on 6/26/2023 stating I owe $230.10 to KC Pulmonary Practice (Dr. ***** ****) **** ** ***** ***** *** **** ** ** ***** for charges on 2/28/2023 and they are collecting the money since I filed no insurance. ***I DID NOT use this practice for any medical procedure nor visit any other facility attached to this practice.*** I did contact the practice directly (talked to *****) and they had an address listed for me where I had lived 7 years ago. They did not have any other information other than my name and DOB. They assumed because of the doctor's name that the charge was for reading the results of a sleep study. I did not have a sleep study anywhere nor have I ever had a sleep study in my 80 years on this earth..."[7] (emphasis added)

- "Call from this number claims that I owe them money and they are attempting to collect a debt. They claim that my credit will be affected. ***I have no debt to anyone***. They state they are Medicredit on behalf of Texas Health. I have zero affiliation and have never even been to *****. I want a cease and desist from this company."[8] (emphasis added)

- "I receive numerous calls from ###-###-#### from Medicredit Inc. I have returned their call on a few occasions left the answering service. ***When they get on the line they always ask me if I am *** or if I know a ***. The name has always been different and I do not know anyone of whom they asked. They say sorry we will take you off the list only to call back a day or two later with looking for someone else.*** What the Hell are wrong with these people and why do you not shut them down. I had disconnected my home phone after having the number to almost 3 decades last year. I then added a new line 4 months ago and seem like I will need to disconnect this line again. So sad!"[9] (emphasis added)

---

[5] Id.
[6] Id.
[7] Id.
[8] Id.
[9] Id.

5

- "***FIRST: I have absolutely NO unpaid bills of any kind***. SECOND: I have never been to the hospital or the town in ** for whom their Robocall message states they are calling. THIRD: They never mention my name, or any other name on the computerized v.m. msg, so most likely ***they were given the wrong phone# or they just used the wrong*** #--for 20+ yrs, my phone# and address were unchanged, and no one else lived with me. FOURTH: I have never received anything by mail from them OR the hospital they claim referred them--another reason I suspect they aren't even trying to reach ME, probably someone else.FIFTH: I am almost 80-yrs-old, and follow the Consumer Guidelines for Seniors to avoid being scammed by unsolicited and predatory callers who try to get money from older people. (Therefore, I do not call these people back. I am told it just encourages them.)"[10] (emphasis added)

20. Defendant does not procure the appropriate consent before placing pre-recorded collection calls to consumers.

21. In response to these calls, Plaintiff Furr brings this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

## PLAINTIFF FURR'S ALLEGATIONS

22. Plaintiff Furr is the sole owner and user of his cell phone number.

23. Plaintiff Furr has been receiving unwanted calls, including pre-recorded calls from Medicredit to his cell phone.

24. The calls are intended for somebody named Mena regarding an alleged debt that Plaintiff Furr does not owe.

25. Plaintiff Furr answered at least 2 calls from Defendant Medicredit and he told the employees to stop calling his cell phone number.

26. Despite his stop requests, the calls continued.

---

[10] https://www.bbb.org/us/mo/saint-louis/profile/collections-agencies/medicredit-inc-0734-110035703/customer-reviews

6

27. By the middle of June 2023, Plaintiff stopped answering calls from Defendant Medicredit, but he still received pre-recorded voicemails regarding the payment of an alleged debt.

28. Plaintiff received unwanted pre-recorded voicemails from Defendant Medicredit on:

- June 22, 2023 at 8:09 AM from 800-888-2238;
- June 30, 2023 at 8:10 AM from 800-888-2238;
- July 8, 2023 at 8:25 AM from 800-888-2238;
- July 18, 2023 at 3:11 PM from 800-888-2238;
- July 26, 2023 at 4:16 PM from 800-888-2238;
- August 3, 2023 at 2:58 PM from 800-888-2238;
- August 16, 2023 at 9:37 AM from 800-888-2238;
- August 23, 2023 at 4:23 PM from 800-888-2238;

29. All of the voicemails that Plaintiff Furr received were the same, stating: "…9929 Monday through Friday during normal business hours. Thank you."[11]

30. Plaintiff Furr believes the voicemails are pre-recorded because they are all incomplete, identical, sound automated and because the partial messages match other voicemails that other consumers posted online, including:

---

[11] https://www.dropbox.com/scl/fi/5kirci9qyo7fc4hp0we15/VoiceMail_2023-08-30_15-01-38.amr?rlkey=tu2ynpuiza00gbmk8hd2g7p1q&dl=0

> **Robocall Spam of the Week: MediCredit Debt Collection**
>
> YouMail — 1.19K subscribers
>
> 115 views  Mar 17, 2023
> Actual audio of a MediCredit Medical Debt Collection Robocall captured by YouMail Inc.
>
> The MediCredit Medical Debt Collection call is a spam robocall that has been sent to millions of consumers. The robocall prompts users to call a number to discuss their recent medical debt from a partnering hospital.
>
> Transcript used in call:
> "Hello we are calling from MediCredit on behalf of Mercy Hospital of Bakersfield. This is a call from a debt collector. Please return our call at 800-777-9929 Monday through Friday during normal business hours.
> Again we are calling from MediCredit on behalf of Mercy Hospital of Bakersfield. This is a call from a debt collector. Please return our call at 800-777-9929 Monday through Friday during normal business hours. Thank you."
>
> First Detected: Wed Aug 16 2017 22:31:59 GMT-0700 (Pacific Daylight Time)       [12]

31.     On August 30, 2023, Plaintiff Furr called 800-777-9929 and spoke to an employee to confirm the reason for the calls. He was told that Medicredit is calling for somebody named Mena.

32.     Plaintiff never provided consent for Defendant Medicredit to place pre-recorded calls to his cell phone number.

33.     The unauthorized telephone calls that Plaintiff received from or on behalf of Defendant has harmed Plaintiff Furr in the form of annoyance, nuisance, and invasion of privacy, occupied his phone memory, and disturbed the use and enjoyment of his phone.

34.     Seeking redress for these injuries, Plaintiff Furr, on behalf of himself and Class of similarly situated individuals, brings suit under the TCPA.

---

[12] https://www.youtube.com/watch?v=WaQsGLF_D9s

8

## CLASS ALLEGATIONS

35.  Plaintiff Furr brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons and entities throughout the United States (1) to whom Defendant placed a call in connection with a past-due medical debt, (2) directed to a number assigned to a cellular telephone service, but not assigned to a person with a past-due medical debt or their authorized representative, (3) with an artificial or prerecorded voice, (4) from September 18, 2019 through the date of class certification.

36.  The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Furr anticipates the need to amend the Class definition following appropriate discovery.

37.  **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

38.  **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the wilfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff Furr will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Furr has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Furr and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Furr nor his counsel have any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Furr. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from

Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Furr and the Pre-recorded No Consent Class)**

41. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

42. Defendant transmitted unwanted telephone calls to Plaintiff Furr and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

43. These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

44. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all pre-recorded calling activity that is done without proper consent, and to otherwise protect the interests of the Class; and

11

e)  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Furr requests a jury trial.

**JUDE FURR**, individually and on behalf of all others similarly situated,

DATED this 20th day of November, 2023.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Class*

12